UNITED STATES of America, Appellee,

v.

Pedro M. GONZALEZ–SANCHEZ, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Carlos LATORRE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Manuel PARRILLA–MARQUEZ, Defendant, Appellant.

Nos. 85–2003 to 85–2005.

United States Court of Appeals, First Circuit.

Argued Feb. 3, 1987.

Decided July 31, 1987.

---

Victor Amador, San Juan, P.R., for appellant, Pedro Gonzalez-Sanchez.

Stanley L. Feldstein, Old San Juan, P.R., for appellant, Carlos Latorre.

Carlos R. Noriega, Hato Rey, P.R., for appellant Manuel Parrilla-Marquez.

Sylvia Royce, U.S. Dept. of Justice, with whom Earl E. Shamwell, Crim. Div., Gen. Litigation and Legal Advice Section, U.S. Dept. of Justice, Washington, D.C., and

Daniel F. Lopez Romo, Hato Rey, P.R., were on brief, for appellee, U.S.

Before WISDOM,[*] Senior Circuit Judge, BOWNES and TORRUELLA, Circuit Judges.

WISDOM, Senior Circuit Judge:

The defendants appeal their convictions for federal offenses committed in connection with the burning of a building owned by the R & S Sales Corporation, (R & S), a wholesale dry goods business in Bayamon, Puerto Rico. Carlos Latorre, Pedro Gonzalez Sanchez, and Manuel Parrilla Marquez were indicted and convicted for conspiracy to commit an offense or fraud against the United States. 18 U.S.C. § 371. Gonzalez was indicted and convicted also for aiding and abetting mail fraud. 18 U.S.C. §§ 2 & 1341. The defendants were found guilty of all charges. We affirm, except with regard to the appeal of Manuel Parrilla Marquez.

## I. FACTS

According to the United States Attorney, Wilfredo Rivera Diaz, owner of R & S, was a member of the "Latorre gang". This gang was a criminal organization in Puerto Rico headed by Jose Luis ("El Cano") Latorre. The gang hijacked vans, stored the goods at their warehouses, and resold the goods to established businesses. It also arranged to have certain businesses "torched" to collect insurance, sometimes on merchandise that had been removed before the fire or had never been received. Soon after acquiring the R & S, which was financially distressed, Rivera Diaz had his manager renegotiate and renew the fire insurance policy for the business with the Puerto Rican American Insurance Company (PRAICO). The policy provided coverage for the warehouse, the inventory, the office contents, and losses from "business interruption". About one month later, during the early morning hours of October 7, 1981, a series of violent explosions and a fire completely destroyed the buildings.

The insurance company, PRAICO, suspected arson. Although the warehouse ap-

* Of the Fifth Circuit, sitting by designation.

peared to have been empty the night of the fire, large claims were submitted for goods alleged to have been delivered to the warehouse just before the fire. Further investigation showed a link between this fire and three other recent fires. The Caribbean International, also owned by Rivera Diaz, had burned one year earlier. Claims totalling $600,000 had been filed against PRAICO, the insurer of that business. Just two months before the Caribbean fire, another fire had destroyed the Magnolia Pharmacy, a business owned by Rafael Gilberto Latorre, brother of "El Cano" Latorre. Six months before the Magnolia fire, fire destroyed the Eleven International, which was managed by Rivera Diaz and owned by members of the Latorre gang. The investigation of these fires, the resulting insurance claims, and other illegal activities of the Latorre gang resulted in the indictment and trial of numerous members and accomplices of the gang. The three defendants in this action were tried for their part in the conspiracy to burn the R & S building and defraud its insurer, PRAICO.

The government identified defendant Carlos Latorre as the "torcher" for the gang. Carlos Latorre is the brother of gang boss "El Cano" Latorre. The evidence overwhelmingly showed that he started the fire that destroyed the R & S building. Indeed, he had placed so much gasoline in the warehouse that he was seriously burned from the explosion that occured when he lit the fire. The government's investigation implicated Latorre also in the Caribbean International fire and in the thefts of merchandise from tractor-trailer vans, another of the gang's illegal activities. Carlos Latorre entered into a plea agreement with the government. In return for pleading guilty to conspiracy and theft from interstate shipment and for promising to cooperate fully and honestly in the investigation and prosecution of the Caribbean International and R & S cases, the government promised that it would not prosecute him for his role in the two other cases. Because his testimony in the Caribbean International trial differed from his earlier statements to government agents, the United States Attorney rescinded the plea agreement and indicted him in the present case.

Pedro Gonzalez Sanchez was the gang's lawyer. He prepared and assisted in the preparation of false and inflated claims against the fire insurers of the Caribbean International, the Magnolia Pharmacy, and R & S Sales. One witness testified that Gonzalez advised the members of the gang to burn down the Caribbean International to solve its financial problems. When Latorre was seriously burned in the R & S fire, Gonzalez helped bring Latorre to a hospital. At the hospital, Gonzalez suggested an alibi for Latorre's injuries: that Latorre was accidently burned in a fire on a friend's boat. The alibi was false; the boat identified by Latorre had never been involved in a fire. Gonzalez assisted in preparing the fraudulent insurance claims against PRAICO, the insurer of R & S. Concerned that PRAICO would become suspicious because he had also filed claims with PRAICO for the Caribbean International fire, he hired a young attorney to sign and forward the claims for losses from the R & S fire.

The third defendant, Manuel Parrilla Marquez, was a high-ranking police officer in Puerto Rico with alleged ties to the Latorre gang. The government introduced evidence that Parrilla accepted bribes to impede investigations into the theft of vans, the arson of the Caribbean International, and the arson of R & S sales. A witness testified that Parrilla had agreed to testify favorably for the gang in a civil suit to collect insurance from the fire insurer of the Eleven International. Parrilla was tried, earlier, for his alleged participation in the Caribbean International arson conspiracy, but was acquitted.

## II. BREACH OF PLEA AGREEMENT

Before the commencement of trial, Latorre moved for the dismissal of the charges against him because of his plea agreement with the government. The government had promised not to prosecute Latorre for his role in the R & S arson in exchange for Latorre's plea in another case and his promise to cooperate in the investi-

gation and prosecution of the Caribbean and R & S cases. At a hearing on the motion, the government presented evidence to show that Latorre failed to cooperate fully and honestly in giving testimony at the Caribbean trial because he testified differently from his earlier statements to government agents. The trial court found that Latorre had breached his agreement, thereby releasing the government from its obligation to refrain from prosecuting him. Examining Latorre's challenges, we find no clear error in the trial court's finding and affirm its decision.

■■■■ When a defendant has entered into a plea agreement with the government, the court must ensure that he receives what is reasonably due him under the agreement.[1] Contractual principles apply insofar as they are relevant in determining what the government "owes" the defendant.[2] If the defendant lives up to his end of the bargain, the government is bound to its promises.[3] On the other hand, if the defendant fails to fulfill his promises, the government is released from its agreement and may indict and try the defendant regardless of whatever it may have promised earlier.[4] As in this case, the failure of the defendant to fulfill his promise to cooperate and testify fully and honestly releases the government from the plea agreement.[5]

■■■■ Latorre argues that he is entitled to a jury trial on the question of whether he breached his plea agreement. He contends that a jury determination is necessary to protect the important constitutional concerns associated with plea bargaining. All recognize the constitutional right of a defendant to enforce plea agreements.[6] This Circuit and others have set forth safeguards to insure that the government does not arbitrarily or capriciously disregard its obligations under a plea agreement. When the government seeks to revoke a plea agreement, it must demonstrate to the trial court that the defendant has not fulfilled his promises. If disputed facts exist, the trial court must hold an evidentiary hearing.[7] The government bears the burden of demonstrating by adequate evidence that there has been a substantial breach.[8] The factual determination whether the plea agreement has been breached lies with the trial judge.[9] Latorre received the process that was due; he is not entitled to a jury determination of the question.

■■■■ We review the finding of the trial court for clear error.[10] The government's evidence showed that Latorre changed his statements. In a statement to FBI agents, Latorre described the burning of the Caribbean International. He stated that Edgardo Giorgi set the fire. At Giorgi's trial, Latorre testified that he set the fire and that Giorgi's only participation was in waiting nearby. Faced with Latorre's surprise testimony, the United States Attorney had to "impeach" its own witness with his prior

1. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971).

2. *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985).

3. *United States v. Garcia,* 698 F.2d 31, 37 (1st Cir.1983).

4. *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985); *Ricketts v. Adamson,* —— U.S. ——, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987).

5. *See id.; United States v. Donahey,* 529 F.2d 831, 832 (5th Cir.), *cert. denied,* 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); *United States v. Reardon,* 787 F.2d 512, 515–16 (10th Cir.1986).

6. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

7. *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.1981), *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1982).

8. *United States v. Garcia,* 698 F.2d 31, 35 (1st Cir.1983); *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976); *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.1981), *cert. denied,* 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1981), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981).

9. *See United States v. Khoury,* 755 F.2d 1071, 1073 (1st Cir.1985); *United States v. Verrusio,* 803 F.2d 885, 888–91 (7th Cir.1986).

10. *United States v. Khoury,* 755 F.2d 1071, 1073 (1st Cir.1985); *United States v. Carrillo,* 709 F.2d 35, 37 (9th Cir.1983).

inconsistent statements to show Giorgi's direct involvement in the Caribbean arson. At the hearing on Latorre's motion to dismiss, Latorre admitted that his earlier statement to FBI agents was wrong and that he, not Giorgi, set the fire. The trial judge's finding that Latorre failed to cooperate honestly, either by giving false information to the FBI agents or by giving perjured testimony at the Caribbean International trial, is amply supported by the record.

▮ Latorre argues that the trial court's finding was based on inadmissible and inadequate evidence. His arguments are without merit. At the dismissal hearing, the government introduced a copy of Latorre's original statement, taken down by an FBI agent, based on his interview of Latorre. Although that agent did not testify at the dismissal hearing, two other agents, who had gone over the statement with Latorre immediately before the Caribbean trial, did testify. Each testified that Latorre repeatedly reaffirmed the accuracy of the contents of the written statement. Another agent, who was present at the Caribbean trial, testified as to Latorre's contradictory testimony at the Caribbean trial. Contrary to Latorre's contention, this agent's testimony is not hearsay because it was presented not to prove the truth of the subject matter of Latorre's testimony, but to prove that his testimony was inconsistent with his earlier statements.[11] Moreover, the government introduced in evidence the transcript of Latorre's testimony at the Caribbean trial. Finally, any dispute concerning the honesty of Latorre's cooperation was resolved by Latorre himself when he testified at the dismissal hearing that, contrary to his earlier statement, he set the Caribbean fire.

▮ Latorre argues that even if his testimony was inconsistent, the inconsistency was immaterial because he still placed Giorgi at the scene of the arson and Giorgi was eventually convicted. His argument misinterprets his obligation under the plea agreement. The government's promise was not conditioned upon the conviction of Giorgi or any other defendant; it was conditioned upon Latorre's cooperation in the government's investigation and prosecutions. Latorre failed to cooperate with the government. He cannot expect to receive the benefits of his plea agreement simply because the government was successful in its prosecution of Giorgi despite Latorre's surprise testimony. The district court's findings that Latorre failed to cooperate fully and honestly and that this failure constituted a material breach of the plea agreement are not clearly erroneous.

## III. EVIDENCE OF PRIOR CRIMES

As part of its case, the government presented evidence concerning the defendants' past participation in other crimes committed by the Latorre gang. This evidence falls into three broad groups: evidence of the defendants' participation in or knowledge of other arson and fraud conspiracies; evidence of the defendants' participation in or knowledge of the van thefts; and evidence generally concerning the criminal activities of members of the Latorre gang, but not directly implicating the defendants. Whether this evidence was properly admitted turns on the application of Rule 404(b) of the federal rules of evidence:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

▮ We have often identified the proper analysis for determining whether prior crimes evidence is admissible under Rule 404(b). First, the trial court must determine that the evidence has some "special" relevance; that is, whether the evidence is offered to establish some material issue such as intent or knowledge or is offered solely, and impermissibly, to estab-

---

**11.** *Cf. Curreri v. International Brotherhood of Teamsters, Local 251,* 722 F.2d 6, 11 (1st Cir. 1983); *United States v. Lynn,* 608 F.2d 132, 135 (5th Cir.1979).

lish the defendant's propensity for crime.[12] Second, the trial court must balance the special probative value of the evidence against the danger of unfair prejudice to the defendant, using the considerations underlying Rule 403.[13] This latter task is committed to the trial court's sound discretion. We must defer to its decision absent an abuse of discretion.[14] Finally, even if we are convinced that the trial court committed error, we should not reverse the convictions of the defendants if that error was harmless. The erroneous admission of evidence of earlier crimes is harmless if we determine that it is "highly probable" that the error did not contribute to the verdict.[15]

■ Initially, the defendants argue that the trial judge abused his discretion be-cause he admitted the evidence without regard to the considerations of Rule 404(b).[16] They cite portions of the record in which the trial judge overruled evidentiary objections without comment or with comments suggesting that Rule 404(b) is inapplicable.[17] After a careful reading of the record, we are convinced that the trial judge undertook the proper analysis in determining the admissibility of the evidence. Beginning with the initial objections of defense counsel and throughout the trial, the trial judge made numerous references to the relevance of the evidence to such issues as plan, knowledge, and intent. The record shows also that the trial judge specifically considered the balancing requirement of Rule 403.[18] Because the trial judge under-

**12.** *United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987); *United States v. Morris*, 700 F.2d 427, 431 (1st Cir.1983), *cert. denied sub nom. Graham v. United States*, 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983); *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982); *United States v. Bosch*, 584 F.2d 1113, 1117 (1st Cir. 1978); *United States v. Fosher*, 568 F.2d 207, 212 (1st Cir.1978).

**13.** *United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987); *United States v. Crocker*, 788 F.2d 802, 804 (1st Cir.1986); *United States v. Fosher*, 568 F.2d 207, 213 & n. 21 (1st Cir.1978).

**14.** *United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987); *United States v. Fosher*, 568 F.2d 207, 213 (1st Cir.1978).

**15.** *United States v. Bosch*, 584 F.2d 1113, 1117–18 (1st Cir.1978).

**16.** The Fifth and District of Columbia Circuits have held that the trial court must make on-the-record findings of its analysis under Rule 404(b) upon the timely objection of the defendant and its failure to do so requires a remand for that purpose, unless there is no substantial uncertainty about the correctness of its ruling. *United States v. Robinson*, 700 F.2d 205, 213 (5th Cir.1983); *United States v. Lavelle*, 751 F.2d 1266, 1279–80 (D.C.Cir.1985), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). We need not decide at this time whether to follow these cases from other circuits because the record in this case shows that the trial court did undertake the proper analysis under Rule 404(b).

**17.** The defendants emphasize the discussion between the trial court and counsel concerning an objection made during the government's opening argument. The trial court's remarks, taken out of context, could be read to suggest that it

thought Rule 404(b) did not apply to the evidence. For example, at one point, the trial court responded: "404(b) is unrelated". After reading the entire discussion, however, we find the trial court's remarks ambiguous at worst. The discussion primarily concerned the propriety of the government's description of one of its witnesses, described as a participant and key figure in many of the gang's criminal activities. To the extent the trial judge's remarks were directed to that issue, they were not improper. Rule 404(b) does not apply to evidence of past crimes of persons other than the defendants. *United States v. Morano*, 697 F.2d 923, 926 (11th Cir.1983). Moreover, later discussions concerning evidence directly implicating the defendants in past crimes shows that the trial court understood the applicability of Rule 404(b) in determining the admissibility of that evidence. *See* note 18.

**18.** The trial of the defendants lasted one month; the trial transcript is well over 2000 pages in length. It would be impracticable to cite all the rulings of the trial court that support its proper consideration of Rule 404(b). Instead, one excerpt will suffice:

[Government]: [T]his evidence is highly probative, Your Honor, to show the modus operandi in which this individual (sic) that comprised the Latorre organization and that were responsible for the burning of R & S; how they worked out these dealings. And if we take this evidence that will come out in relation to the testimony already propounded by Wilfredo Rivera Diaz, the relevance and the probative value outweigh any prejudice that might come out of this testimony.

Now, there is no way we can establish that through this witness, that this thing happened, unless we can show it wasn't accidental. We

took the proper analysis in admitting the evidence, we must defer to his decision absent an abuse of his discretion. With this point in mind, we now turn to the defendants' individual evidentiary challenges.

## A. *Latorre*

Latorre complains of evidence that implicated him in three past criminal activities: involvement in the Caribbean International and Magnolia Pharmacy fires; evidence of his involvement in the theft of vans and merchandise; and evidence that he "would shoot out whatever would be shot at". We find that the admission of this evidence does not constitute reversible error.

■ The evidence of Latorre's involvement in the past arsons is probative of the elements of the charge against him in this case. Latorre was indicted for conspiring with others to burn R & S and defraud its insurer. The issue at trial was not just whether Latorre committed arson. The broader issue was whether Latorre knowingly participated in a common scheme to defraud. We have often upheld the admissibility of evidence of past crimes in later trials for conspiracies to commit identical or similar crimes.[19] In such circumstances, the evidence of past similar crimes is helpful to show his mode of operation, intent, and knowing participation in the alleged conspiracy.[20] The relevance is especially strong when, as in this case, the prior crimes involved the same participants.[21] Here, the evidence of Latorre's involvement with the same people in past arson and fraud schemes is especially probative of the issue whether he was an innocent "tool" of others or a knowing participant in the conspiracy.

In contrast, the prejudicial effect of this evidence is small considering its probative value. Of course, the evidence is incriminating; but all highly probative evidence is highly prejudicial in this sense. The question is whether the defendant suffers *unfair* prejudice. This is not a case in which the evidence is so "shocking or heinous [that it is] likely to inflame the jury".[22] Nor is the evidence so tangential to the case that the jury was certain to be confused and misdirected. Finally, the trial judge's instruction to the jury to consider the evidence only as evidence of knowledge and intent and for no other purpose, lessened the danger of unfair prejudice.[23] We find no abuse of discretion in the admission of this evidence.

We are less certain of the propriety of admitting evidence of Latorre's involvement in the van thefts and his role in "shooting things out". Generally, it is the similarity of the past crime that makes it probative of the material issues in a later

have that right to show under Rule 404(b), that there was no absence of intent, there was no inadvertent matter.

.     .     .     .     .

[Defense]: What this man is adding to, apart from this ... needless presentation of cumulative evidence, is bringing prejudicial evidence.

.     .     .     .     .

The Court: All right. I've heard your argument and I'm going to guide myself by the case of United States of America versus Almado Maldonado Medina [761 F.2d 12 (1st Cir. 1985)], and I am going to rule specifically that I find that the probative value of the evidence brought in this case outweighs the possible prejudicial effect that it might have. Now, with respect to Rule 404(b), I believe that this evidence would go to showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake of accident.

Transcript of benchside conferences, Sept. 17, 1985, pp. 121, 125, 127 & 129.

**19.** *E.g., United States v. Scelzo,* 810 F.2d 2, 4–5 (1st Cir.1987); *United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986); *United States v. Zeuli,* 725 F.2d 813, 816 (1st Cir.1984).

**20.** *See United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986); *United States v. Medina,* 761 F.2d 12, 15 (1st Cir.1985).

**21.** *See United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986); *United States v. Medina,* 761 F.2d 12, 15 (1st Cir.1985).

**22.** *United States v. Scelzo,* 810 F.2d 2, 5 (1st Cir.1987).

**23.** *See United States v. Moccia,* 681 F.2d 61, 63 (1st Cir.1982).

trial.[24] Here, the only similarity of these past activities with the R & S arson was the involvement of common participants. At some point, a past crime is too dissimilar to be probative of any issue except to show a bent to commit a crime. Moreover, the smaller degree of probativity is less likely to outweigh the increasing danger of unfair prejudice that results when the jury is confronted with evidence of assorted crimes in the defendant's past, crimes that bear only marginal relevance to the current charges against the defendant.

■ We need not determine whether the admission of this evidence was an abuse of the trial court's discretion because, even assuming that an error occured, that error was harmless. The evidence against Latorre was overwhelming. The person who assisted Latorre in purchasing gasoline and starting the fire testified in detail as to the actual torching of the R & S building. Witnesses placed Latorre in meetings with the conspirators at which the plan to defraud the insurer was discussed. One witness, a former employee at R & S, testified that Latorre told her she had been fired because he and others were going to torch the business. Hospital records and witnesses' testimony clearly show that Latorre was badly burned by fire the night of the arson and that his explanation of his burns was fabricated. Another witness testified that, at the hospital, Latorre told him that he was burned while setting fire to R & S Sales. In view of this overwhelming evidence, we find that the verdict would have been the same regardless of the proffered additional evidence.[25]

### B. *Gonzalez*

■ Gonzalez complains of the admission of evidence of three past activities:

evidence that he helped prepare false invoices in connection with the Caribbean International and Magnolia Pharmacy fires; evidence that he counseled gang members to burn down the Caribbean International to avoid bankruptcy; and evidence that he counseled gang members concerning the van thefts. We find no reversible error in the admission of this evidence.

As we said earlier, the similarity of the past arsons renders the evidence of those crimes relevant to the questions of Gonzalez's intent and motive. Moreover, the need for this evidence was especially great in the case against Gonzalez.[26] His preparation of claims for submission to the insurance company was arguably consistent with the conduct of an innocent and unsuspecting attorney, duped by his clients into unknowingly assisting them in a secret scheme to defraud. Evidence, therefore, that Gonzalez helped gang members collect on other fire insurance policies and evidence that he counselled gang members to commit arson was necessary to dispel the inference of innocent conduct and to prove that his participation was with full knowledge of the aims of the conspiracy. In contrast to the high degree of probativity of this evidence, the corresponding danger of unfair prejudice was small. The trial court did not abuse its discretion in admitting this evidence.

■ We find little merit in Gonzalez's challenge to the evidence concerning his counselling of gang members in connection with the van thefts. First, in the context of the testimony in which the evidence arose, we question whether it even raises a Rule 404(b) question. The apparent purpose of its introduction was to overcome an

---

**24.** In *United States v. Scelzo,* 810 F.2d 2, 5 (1st Cir.1987), we said that "for such evidence to be properly admitted, it must have a similarity sufficient to be probative."

**25.** Latorre also challenges other evidence concerning past criminal activity of other members of the gang. Inasmuch as this evidence does not concern past criminal activity of Latorre, Rule 404(b) is inapplicable. *United States v. Morano,* 697 F.2d 923 (11th Cir.1983). Latorre

does not point out any other reason to explain why the admission of this evidence was erroneous.

**26.** In weighing the probative value of earlier crimes against the extent of their prejudicial effect under Rule 404(b), it is appropriate to consider the government's need for the evidence. *United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986).

objection by defense counsel. The government's witness identified Gonzalez as counsellor for the gang. Defense counsel objected to the statement as without foundation; the objection was sustained. In response, the government then pressed the witness for specific descriptions of what Gonzalez did for the gang. He answered by saying, among other statements, "I heard legal advice that he [Gonzalez] gave about the stolen vans of jeans, and the Oil of Olay Cream ...". The testimony was apparently elicted, therefore, for the purpose of setting the foundation for the witness's original statement that Gonzalez was counsellor for the gang and not for the purpose of showing Gonzalez's propensity to commit crime.[27] Moreover the testimony does not directly implicate Gonzalez in any crime; at most, it suggests that Gonzalez had knowledge of prior crimes of other persons. Rule 404(b) does not exclude evidence of prior crimes of persons other than the defendant.[28]

■ Second, even if Rule 404(b) is applicable, we would not find any reversible error. First, the evidence is relevant to dispel an inference of Gonzalez's lack of knowledge of the conspiracy in which he participated. That he handled the legal matters in past criminal activity of the gang and that he had knowledge of its criminal activities is probative of the intent of his conduct in connection with the R & S fire. Second, because the evidence did not directly implicate Gonzalez in criminal conduct—it did no more than show his knowledge of others' conduct—the danger of unfair prejudice was relatively small. Finally, in the light of the strong evidence against Gonzalez, the decision of the trial court to allow this minor remark to remain

before the jury constitutes no more than harmless error.

## C. *Parrilla*

■ Parrilla makes several evidentiary challenges. One of these challenges is dispositive of his appeal. Over the objections of defense counsel, the government presented evidence that Parrilla met with gang members on September 1, 1980 and accepted money as a bribe with the object of impeding the investigation of the Caribbean International arson. In an earlier trial, Parrilla had been tried on a charge of conspiracy for his participation in the Caribbean arson and fraud scheme. Parrilla was acquitted in that trial. Although probably admissible under Rule 404(b), the evidence should have been excluded under the doctrine of collateral estoppel.

In *Ashe v. Swenson*,[29] the Supreme Court explained the role of collateral estoppel in criminal trials:

"Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 U.S. 85, 61 L.Ed. 161, 37 S.Ct. 68.[30]

Under this doctrine, evidence of a prior crime for which the defendant was acquitted is inadmissible in a later trial, unless

---

**27.** A later hearing, out of the jury's presence, suggests that the defendant objected to the evidence because of the witness's alleged lack of personal knowledge of the matter to which he testified. Both the trial court and defense counsel quizzed the witness on how he knew what Gonzalez did for the gang. Satisfied that the witness's personal knowledge was sufficient to allow the testimony to stand, the trial court overruled the motion of defense counsel to strike the testimony. The entire colloquy contains neither references to Rule 404(b) nor remarks that would suggest an objection under

Rule 404(b). Without a timely objection stating the specific grounds therefor, our review is limited to plain error. Fed.R.Crim.P. 52(b); Fed.R. Evid. 103.

**28.** *United States v. Morano*, 697 F.2d 923, 926 (11th Cir.1983).

**29.** 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

**30.** *Id.* at 442, 90 S.Ct. at 1194; 25 L.Ed.2d at 475.

the evidence goes merely to a collateral fact concerning that prior crime, a fact that was not necessarily decided by the jury in reaching its verdict.[31] The fact the government sought to prove in this trial—Parrilla's involvement in the Caribbean arson conspiracy—is the same ultimate fact resolved in Parrilla's favor when the jury acquitted him in the Caribbean trial. The government concedes this point and admits that the evidence was admitted in error.

■■■■ The government argues that the erroneous admission of this evidence was harmless. *Ashe* held that the protection afforded by the doctrine of collateral estoppel is embodied in the fifth amendment guarantee against double jeopardy.[32] Because the admission of evidence in violation of the doctrine of collateral estoppel constitutes a constitutional error, it is also reversible error unless we are satisfied, "beyond a reasonable doubt", that the evidence had no possible effect on the verdict.[33] Under this strict standard, courts usually do not find this type of error harmless.[34]

■■■■ Examining the record in this case, we must conclude that the error was harmful. First, the evidence was highly incriminating. Evidence of past crimes, committed with the same participants, is strongly probative of the defendant's guilt of conspiracy to commit a later and similar crime.

Indeed, it is for that reason we have upheld the admission of the same type of evidence against Latorre and Gonzalez under Rule 404(b). Unlike the cases against Latorre and Gonzalez, however, the evidence against Parrilla was more attenuated. The only direct evidence of his participation in the R & S conspiracy was the testimony of a co-conspirator who was present at a meeting at which Parrilla allegedly accepted $600 during discussions of the R & S fire. There was no evidence of any other acts he undertook to further the conspiracy such as aiding in the arson or aiding in collecting from the insurance company. Although there is a probability that the jury would have convicted Parrilla without the evidence, we cannot say beyond a reasonable doubt that the evidence had no possible effect. Parrilla's conviction must be reversed.[35] In the light of our disposition of this issue, we need not rule on his other evidentiary challenges.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Latorre points to several instances of conduct demonstrating ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as

**31.** *See id.* at 444, 90 S.Ct. at 1194; 25 L.Ed.2d at 475–76; *United States v. Day,* 591 F.2d 861, 869 (D.C.Cir.1978).

**32.** 397 U.S. at 445–46; 90 S.Ct. at 1195; 25 L.Ed.2d at 476–77.

**33.** *United States v. Gornto,* 792 F.2d 1028, 1032 (11th Cir.1986); *Albert v. Montgomery,* 732 F.2d 865, 870 (11th Cir.1984). *Cf. Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967); *Lacy v. Gardino,* 791 F.2d 980, 983, (1st Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 284, 93 L.Ed.2d 259 (1986).

**34.** *See e.g., Green v. United States,* 426 F.2d 661, 662 (D.C.Cir.1970); *United States v. Mock,* 604 F.2d 341, 346–47 (5th Cir.1979); *Albert v. Montgomery,* 732 F.2d 865, 870–71 (11th Cir.1984). In a number of cases, convictions are reversed without regard to whether the error was harmless. *E.g., United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979); *United States v. Castro,* 629 F.2d 456, 465 (7th Cir.1980); *United States v.*

*Brown,* 547 F.2d 438, 443 (8th Cir.), *cert. denied sub nom. Hendrix v. United States,* 430 U.S. 937, 97 S.Ct. 1566, 51 L.Ed.2d 784 (1977).

**35.** We find no merit, however, in Parrilla's argument that his *prosecution* in this trial was barred by collateral estoppel. That doctrine bars a subsequent trial only if an essential element of the subsequent charge was necessarily decided in the defendant's favor in an earlier trial. *United States v. Bosch,* 584 F.2d 1113, 1118–19 (1st Cir.1978). The government does not have to show Parrilla's involvement in the Caribbean arson to convict him for conspiracy in the R & S arson and fraud scheme. Moreover, Parrilla's involvement in the R & S arson was not raised in the Caribbean trial, thus precluding the possibility that the jury in that trial resolved in his favor any facts necessary to support a conviction for his involvement in the R & S arson.

having produced a just result." [36] The defendant is entitled not to assistance without flaw, but to "reasonably competent assistance".[37] A conviction should be reversed only if counsel's performance was deficient and the deficiency prejudiced the defense.[38] Examining Latorre's contentions against these standards, we find his challenge without merit.

■ Latorre's chief complaint is that his absence from the jurisdiction until immediately before trial prejudiced his defense and his attorney did too little too late to remedy this prejudice.[39] The record does not support the merit of this complaint. Before the trial, Latorre had been incarcerated in Minnesota. Although he was not returned to Puerto Rico until Sunday, August 25, 1985, the day before the beginning of trial proceedings, his attorney had met with him during the original arraignment in Puerto Rico in March. After trial began, his attorney had almost a month to prepare a defense. Moreover, any prejudice that resulted from Latorre's absence from Puerto Rico was not caused by his attorney's neglect. The record shows that his attorney specifically requested at the March hearing that Latorre be held in Puerto Rico so that the two could consult. On August 12 at a pre-trial conference, his attorney sought an order to have Latorre brought to Puerto Rico at least seven days prior to trial. Again, at preliminary proceedings the day before the trial, his attorney sought a continuance because of the delay in Latorre's return to Puerto Rico. The record does not disclose the reasons for the government's inability or unwillingness to return Latorre to Puerto Rico at an earlier date. It does disclose, however, that the delay was not caused by the inattentiveness of Latorre's attorney.

Notably, Latorre does not complain that his attorney handled the trial ineffectively or neglected to raise possible defenses. The trial transcript indicates that his attorney cross-examined competently all of the government's witnesses, raised timely and appropriate objections, and otherwise conducted himself as a competent attorney. In short, his attorney did all that could have been reasonably expected from him in the face of the government's overwhelming evidence of Latorre's guilt.

## V. LIMITATION OF CROSS–EXAMINATION

The defendants challenge the trial court's decision to preclude cross-examination into the mental health history of Wilfredo Rivera Diaz, one of the government's more important witnesses. In 1972, Rivera Diaz was discharged from military service with a ten percent disability based upon his mental condition. A later military examination in 1974 found that his condition had improved and stabilized. A court-ordered examination in 1983 found no evidence of mental disability. The 1983 report did not indicate that the examiner explored Rivera Diaz's past military medical history.

The government filed a motion to exclude evidence of Rivera Diaz's past medical history, arguing that his ten-year old condition had little bearing on his capacity to testify and that cross-examination into the matter would be pointless and confus-

---

36. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984).

37. *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978).

38. *Bryant v. Vose,* 785 F.2d 364, 369 (1st Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986).

39. Related to this complaint, Latorre argues that his attorney planned to withdraw and ignored the case until the last moment. His argument is inconsistent with another of his arguments: that his attorney's representation of another defendant created a conflict of interest and that his attorney should have moved for the appointment of other counsel so that he could have withdrawn. Latorre's attorney *did* move to withdraw; that motion was denied. His attorney brought the conflict to the court's attention and a hearing was scheduled. At the hearing, the magistrate found no conflict because the other defendant had been recently dismissed from the case. Latorre's attorney handled the conflict appropriately. We find no merit in Latorre's arguments.

ing.[40] In response, defense counsel argued that he sought not to establish Diaz's lack of capacity to testify, but to establish his lack of credibility. He argued that the absence of any reference to Rivera Diaz's military medical history in the 1983 report demonstrates that Diaz concealed his past from the examiner and that this concealment is relevant to his credibility as a witness.

■■■ The trial court is vested with the discretion to limit cross-examination, including examination into a witness's mental health history.[41] We review his decision only for an abuse of that discretion.[42] The trial court found that Rivera Diaz suffered no mental incapacity that would affect his ability to testify, based on both the 1974 and 1983 examinations. Concerning the witnesses' "concealment" of his past history, the trial court found no evidence that Rivera Diaz deliberately concealed this history. It concluded that the evidence would "result in undue delay and a waste of time, and needless presentation of cumulative evidence, as well as confuse the jury." Given the speculative and tenuous nature of this evidence, we find no abuse in the trial court's exercise of its discretion.

## VI. DISCOVERY OF WITNESS STATEMENTS

The defendants challenge the trial court's refusal to order the government to produce the summary of Rivera Diaz's debriefing by Special Agent David Miller.[43] They base their right to the summary on the Jencks Act, 18 U.S.C. § 3500, which provides in part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

.    .    .    .    .

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

The government resisted production of the summary on the ground that it was not a statement signed or otherwise adopted by Rivera Diaz.

In *Goldberg v. United States*,[44] the Supreme Court held that a written summary of a witness interview could be a statement for purposes of the Jencks Act. The determination depends on a finding that the summary was "signed or otherwise adopted or approved by [the witness]" as provided in subsection (e)(1) of the Act.[45] This factual determination must be made by the trial court and, if necessary, after an evidentiary hearing.[46] If the summary is not signed by the witness, the evidence must show that the interviewer read the statement back to the witness and that the witness approved the statement.[47] The Court noted, however:

---

**40.** The government told the court of its experience in the trial against the defendants for van thefts. Rivera Diaz testified for the government in that trial. He was cross-examined at length concerning his mental health history. The government found the examination time-consuming, irrelevant, and confusing. Its experience in the first trial prompted the United States Attorney to move sucessfully for a limitation on cross-examination in the Caribbean trial as well as in this trial.

**41.** *United States v. Honneus*, 508 F.2d 566, 573 (1st Cir.1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Lopez*, 611 F.2d 44, 45 (4th Cir.1979).

**42.** *United States v. Lopez*, 611 F.2d 44, 46 (4th Cir.1979).

**43.** The parties refer to this summary as a "302".

**44.** 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

**45.** *Id.* at 110 & n. 19; 96 S.Ct. at 1348 & n. 19; 47 L.Ed.2d at 618 & n. 19.

**46.** *Id.* at 108–09; 96 S.Ct. at 1347; 47 L.Ed.2d at 616–17.

**47.** *Id.* at 110, 96 S.Ct. at 1348; 47 L.Ed.2d at 618.

Every witness interview will, of course, involve conversation between the lawyer and the witness, and the lawyer will necessarily inquire of the witness to be certain that he has correctly understood what the witness has said. Such discussions of the general substance of what the witness has said do not constitute adoption or approval of the lawyer's notes within § 3500(e)(1)....[48]

■ Upon defendants' request, the trial court held an evidentiary hearing into the nature of the summary of Rivera Diaz's interviews. Rivera Diaz testified that Agent Miller sometimes went over portions of his interview notes with Diaz to ensure that they were correct. Miller did not, however, read back all his notes or show Rivera Diaz the summary that was produced from those notes. Rivera Diaz also said that he thought he signed something, but was not sure what he had signed. Agent Miller testified that he was positive that Rivera Diaz did not sign the interview notes or the summary, but that he might have signed a waiver of his Miranda rights. After hearing the evidence, the trial court ruled that Diaz did not adopt the notes or the summary and that Miller's review of his notes constituted no more than "general substance discussions" with Diaz. We find no clear error in this factual finding. Accordingly, the trial court's decision that the summary was not a witness statement for purposes of the Jencks Act was proper.

## VII. JURY INSTRUCTION ON WITNESS INTIMIDATION

At trial, the government presented evidence that Gonzalez attempted to intimidate one of the government's witnesses. The trial court instructed the jury accordingly:

Evidence that a defendant attempted to dissuade a witness from testifying or persuade a witness to testify falsely by threats, intimidation, or other means may be considered by you, along with the other evidence in the case, as a circumstance tending to show defendant's consciousness of guilt. You are not to consider this evidence for any other purpose.

Such evidence is not sufficient in itself to prove guilt. It is for you to determine whether you believe the evidence and, if you do, what weight and significance you accord it.

Gonzalez challenges the instruction as improper and prejudicial.

■ We find no merit in Gonzalez's challenge. The trial judge has latitude in giving his instructions to the jury. Our responsibility is to "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." [49] The defendant's attempted intimidation of a witness is relevant to his consciousness of guilt and an instruction on this point is proper when sufficiently supported by the evidence.[50] We find no abuse of discretion in the giving of the instruction.

## VIII. SUFFICIENCY OF THE EVIDENCE

Gonzalez challenges the sufficiency of the evidence upon which he was convicted of count two of the indictment, aiding and abetting mail fraud, 18 U.S.C. § 1341. Specifically, he contends that there was insufficient evidence of a mailing, a necessary element under § 1341. Viewing the evidence in the light most favorable to the government, as we must do in determining the sufficiency of the evidence,[51] we find no merit in Gonzalez's challenge.

---

**48.** *Id.* at 110 n. 19; 96 S.Ct. at 1348 n. 19; 47 L.Ed.2d at 618 n. 19.

**49.** *United States v. Picciandra,* 788 F.2d 39, 46 (1st Cir.) (quoting *United States v. Fishbach & Moore, Inc.,* 750 F.2d 1183, 1195 (3d Cir.1984), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1397, 84 L.Ed.2d 785 (1985)), *cert. denied,* — U.S. —, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986).

**50.** *United States v. Kimmel,* 777 F.2d 290, 293 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986).

**51.** *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942).

■ The government presented a letter from the claims adjuster for PRAICO, to Jose Santiago, the owner of the building housing R & S Sales. The letter concerned insurance claims that Santiago had filed on behalf of himself and R & S Sales. The government presented evidence that the letter was mailed and received by Santiago.[52] The government also presented evidence that Gonzalez aided Santiago in preparing the claims to submit to PRAICO. This evidence is sufficient to support Gonzalez's conviction. Section 1341 expressly prohibits placing things in the mail, taking things from the mail, and causing things to be delivered through the mail for the purpose of executing any scheme to defraud.[53] It is not necessary to show that the defendant personally mailed or received the documents in question.[54] The government need show only that the defendant caused the mailing by doing some act from which it is reasonably foreseeable that the mails will be used.[55] From the evidence presented by the government, the jury could reasonably infer that Gonzalez aided and abetted Santiago, for the purpose of executing a scheme to defraud, in taking something from the mail or causing something to be delivered in the mails.

■ Parrilla challenges the sufficiency of the evidence showing that he was a knowing member of the conspiracy. Although we have found other grounds to reverse his conviction, we must review his challenge of the sufficiency of the evidence to ensure that he is not retried in violation of the double jeopardy clause.[56] Examining his challenge, we find the evidence sufficient to support his conviction and, thus, hold that double jeopardy does not prevent his retrial.

■ In examining the sufficiency of the evidence, we have examined all the evidence submitted to the jury, regardless of whether it was properly admitted.[57] The

52. Gonzalez argues that there was no direct evidence that this letter was actually mailed. His argument is without merit. Benjamin Acosta testified that he prepared the letter to be mailed by his office. He testified concerning the procedures at his office for mailing correspondance. His testimony concerning the ordinary business practices of his office was sufficient to allow the jury to infer that the letter was delivered through the mail. *See United States v. Ledesma,* 632 F.2d 670, 675–76 (7th Cir.), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980); *see also United States v. Davidson,* 760 F.2d 97, 98–99 (6th Cir.1985).

53. Section 1341 provides in applicable part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

54. *United States v. Benmuhar,* 658 F.2d 14, 16–17 (1st Cir.1981), *cert. denied sub nom. Nieves v. United States,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982).

55. *United States v. Martin,* 694 F.2d 885, 889–90 (1st Cir.1982); *United States v. Benmuhar,* 658 F.2d 14, 16–17 (1st Cir.1981), *cert. denied sub*

*nom. Nieves v. United States,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982).

56. The double jeopardy clause does not prevent the retrial of a defendant after his conviction has been reversed on appeal unless the reversal was grounded on the insufficiency of the evidence at trial. *Burks v. United States,* 437 U.S. 1, 15–17, 98 S.Ct. 2141, 2149–50, 57 L.Ed.2d 1, 12–13 (1978). Even if the appellate court finds alternative grounds for reversal, it must consider the defendant's challenge to this sufficiency of the evidence to ensure that the prohibition against double jeopardy is upheld. *United States v. United States Gypsum Co.,* 600 F.2d 414, 416 (3d Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979); *United States v. Sneed,* 705 F.2d 745, 748–49 (5th Cir.1983); *United States v. Marolda,* 648 F.2d 623, 624 (9th Cir.1981).

57. Of course, if the evidence is insufficient without the improperly admitted evidence, the conviction must be reversed because the error of admission was necessarily prejudicial error. For purposes of determining whether the double jeopardy clause prevents a retrial, however, we must consider all the evidence that was submitted before the jury. *United States v. Marshall,* 762 F.2d 419, 423 (5th Cir.1985); *United States v. Tranowski,* 702 F.2d 668, 671 (7th Cir. 1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984); *United States v. Harmon,* 632 F.2d 812, 814 (9th Cir.1980). A contrary rule would force us to speculate as to what additional evidence or alternate theories the

evidence shows that Parrilla met with Rivera Diaz and "El Cano" Latorre after the R & S fire and accepted $600 to suppress the police investigation into the fire. The evidence also showed that Parrilla had accepted money from the gang to help them in other arsons and crimes and that he had prepared to testify in the gang's behalf in a suit to recover insurance from the Eleven International fire. The government may not have proved that Parrilla "knew every detail of the conspiracy, but this is not its burden."[58] The government presented more than enough evidence to allow the jury to find that Parrilla was a knowing member of the conspiracy.

We have examined all of the arguments raised by the defendants whether or not discussed in this opinion. The convictions of Carlos Latorre and Pedro Gonzalez Sanchez are AFFIRMED. The conviction of Manuel Parrilla Marquez is REVERSED. The case as to him is REMANDED to the district court for a new trial.

government could have brought forward had the trial court properly excluded the inadmissible evidence, *Harmon,* 632 F.2d at 814. Or, it would force the government to "overtry" its cases—to introduce all its available evidence, however redundant—to ensure that it could retry the defendant if some of its evidence is held

on appeal to be inadmissible. *Tranowski,* 702 F.2d at 670.

**58.** *United States v. Benmuhar,* 658 F.2d 14, 16 (1st Cir.1981), *cert. denied sub nom. Nieves v. United States,* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982).