**UNITED STATES of America, Appellee,**

v.

**Alejo Maldonado MEDINA,
Defendant, Appellant.**

No. 83–1546.

United States Court of Appeals,
First Circuit.

Argued Feb. 4, 1985.

Decided April 26, 1985.

Carlos V. Garcia Gutierrez, Santurce, P.R., with whom Harry Anduze Montano, Santurce, P.R., was on brief for defendant, appellant.

Louis M. Fischer, Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., and Dana D. Biehl, Dept. of Justice, Washington, D.C., were on brief for appellee.

Before COFFIN, Circuit Judge, WISDOM,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Defendant-appellant Alejo Maldonado Medina appeals from a jury conviction of conspiring to commit extortion, and the actual commission of the offense in violation of the Hobbs Act, 18 U.S.C. § 1951. The extortion consisted of kidnapping Mario Consuegra and telling Francisco Consuegra, Mario's father and a wealthy jeweler, that his son faced violence and death unless and until a ransom of $224,800 in cash and gold chains was paid. Five issues are raised on appeal which we discuss seriatim.

## I. THE ADMISSION OF EVIDENCE OF A PRIOR KIDNAPPING

The Consuegra kidnapping took place on September 1, 1982. On March 28, 1982, the same persons involved in the Consuegra kidnapping had abducted Julio Cortes Melendez, Jr., the son of a numbers racketeer, and held him until a ransom of $200,000 was paid by his father. Presumably because interference with interstate commerce could not be shown,[1] no federal charges were brought against the defendant for the Cortes kidnapping-extortion. In the trial below, the prosecution led off by introducing evidence of the kidnapping of Cortes and defendant's participation in it. Defendant claims that it was error to admit this evidence for two reasons: that because interstate commerce was not obstructed or affected, such evidence was inadmissible, and that its admission result-

ed in a constructive amendment of the indictment. The government's position is that the evidence was properly admitted as proof of an overt act alleged in the indictment and that it was admissible under Federal Rule of Evidence 404(b).

We start with the indictment. It charged in Count One that Maldonado, Cesar Caballero-Rivera, Roberto Stevenson Louis, Jorge David Casanova-Cruz, and William Suarez-Garay conspired together to commit extortion by kidnapping Mario Consuegra and holding him for ransom. The indictment alleged that the conspiracy began "on or about March of 1982." Count Two charged the commission of the substantive offense as "on or around September 2, 1982."[2] The first overt act alleged under the conspiracy count charged that "on or about March 28, 1982," Maldonado, Caballero and Stevenson kidnapped Julio Cortes, Jr., in order to obtain $200,000 from his father. The second overt act states:

2. The plans, methods and techniques used in the kidnapping referred to in Overt Act I were similar and identical to those which would be and were used to kidnap the son of Francisco Consuegra and extort money and jewelry from the said Francisco Consuegra, including

a. Telling the kidnap victims they were police officers and using hand cuffs to restrain them.

b. Keeping the kidnap victims on a mattress in the rear of a van.

c. Telling the extortion victims to drive to Las Americas Expressway

---

* Of the Fifth Circuit, sitting by designation.

1. The Hobbs Act, 18 U.S.C. § 1951, provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—
. . . .

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

2. Caballero, Casanova and Suarez were tried along with Maldonado. Caballero was convicted on both counts, Casanova was convicted on the conspiracy count, and Suarez was acquitted. Stevenson pleaded guilty to both counts prior to trial and testified for the government.

where they would receive further instructions.

 d. Leaving a note containing instructions within a container located at identified marks on the Las Americas Expressway.

 e. Telling the extortion victims to place the ransom in pillow cases.

 f. Telling the extortion victims to drop the pillow cases containing the ransom over the side of a bridge located on Las Americas Expressway.

The third overt act alleged that "[o]n or about March 29, 1982, the defendant, Alejo Maldonado-Medina, made and maintained a tape recording of a telephone conversation of the kidnapping and extortion plot involving Julio Cortes."

■ The first question is whether evidence of the Cortes kidnapping was properly admitted as proof of an overt act. It has been established beyond challenge that an overt act need not be the substantive crime that is the object of the conspiracy, nor even criminal in character; its function is to show the operation of the conspiracy. *Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084, 1 L.Ed.2d 1356 (1957). But it does not follow from this that an overt act cannot be another crime. In *United States v. Murzyn,* 631 F.2d 525, 534–35 (7th Cir.1980), *cert. denied,* 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981), the court held that intrastate auto thefts were properly alleged as overt acts because the acts were taken to "effect the object of the conspiracy," the interstate transportation and sale of stolen motor vehicles. Defendant has cited no cases, and we have found none, holding that an overt act cannot be another crime or that, if it is, it must be a federal crime. Such a proposition runs directly counter to the function of an overt act, "to demonstrate the conspiracy's existence, i.e., to prove that it is at work." *United States v. Slocum,* 695 F.2d 650, 654 (2d Cir.1982), *cert. denied,* 460 U.S. 1015, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).

■ Moreover, whether or not alleged as overt acts in the indictment, the evidence of how the Cortes kidnapping was carried out was admissible under Federal Rule of Evidence 404(b). The procedure for the admission of evidence under 404(b) was carefully delineated by us in *United States v. Morris,* 700 F.2d 427, 431 (1st Cir.), *cert. denied,* 461 U.S. 947, 103 S.Ct. 2128, 77 L.Ed.2d 1306 (1983). Under Federal Rule of Evidence 404(b), evidence of other crimes may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The first step is to determine if the evidence has some "special" probative value. Here, the "special" probative value was to show that a *modus operandi* identical in most respects to the one used in the kidnapping at issue had been used successfully by the same persons to carry out a similar kidnapping five months previously. This is certainly evidence from which a jury could reasonably find "motive, intent, preparation, plan [and] knowledge." But the fact that the evidence has "special" probative value is only the first step towards admissibility; "the district judge must also balance its probative value against possible prejudice." *Id.* at 431. The balancing decision is left to the discretion of the district court. *Id.* The district court here went through the balancing process and specifically ruled, "I find that the probative value of the Cortes evidence outweighs the possible prejudicial effect that it might have." This ruling was clearly not an abuse of discretion.

■ On the proof presented, the jury could have found beyond a reasonable doubt that the defendant was a participant in the planning and execution of the kidnapping of Julio Cortes and shared in the division of the extorted ransom. Based on the evidence of the two kidnappings, the jury could have found beyond a reasonable doubt that the Cortes kidnapping was a prelude to the kidnapping of Consuegra and that the success the defendant and his cohorts had in the Cortes abduction-extortion led them to a repeat performance with a different victim. Of course, if the proof

of the Cortes kidnapping constructively amended the indictment, then the fact that it was charged as an overt act or was admissible under Federal Rule of Evidence 404(b) cannot save the prosecution's case. We turn, therefore, to the constructive amendment issue.

In *United States v. Kelly*, 722 F.2d 873, 876 (1st Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984), we held:

> To prevail on the theory that there has been a constructive amendment to the indictment, appellant must show that his fifth and sixth amendment rights have been infringed. The fifth amendment requires that a defendant be tried only on a charge made by the grand jury.... The sixth amendment working in tandem with the fifth amendment, requires that the defendant "be informed of the nature and cause of the accusation." U.S. Const.amend. VI. [Footnote omitted.]

*See also United States v. Gibson*, 726 F.2d 869, 873 (1st Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984).

There can be no doubt that Counts One and Two of the indictment charged defendant and his accomplices with conspiring to commit extortion by kidnapping Mario Consuegra and the execution of the conspiracy. More than sufficient details were stated to fully apprise the accused of the crime with which he was charged. Nor can there be any doubt that the government proved defendant's participation in the conspiracy and the substantive crime beyond a reasonable doubt. The evidence against defendant was overwhelming.[3] He was identified as the driver of a wine-colored Chevrolet Malibu that went to the place where the kidnappers had told Francisco Consuegra to leave the ransom money. One of the occupants of this car was seen picking up the ransom. Defendant was seen leaving the ransom pickup car and getting into the getaway car, a white Ford Mustang. He received a portion of the gold chains paid as part of the ransom. And it was he who called the victim's father to make the ransom demand and to give the initial instructions for its payment.[4] A pen found in his possession had the same type of ink as was on the note giving additional instructions for the ransom payment. The possibility that the jury might have convicted defendant of the Cortes kidnapping rather than the Consuegra kidnapping was obviated by the district judge who charged the jury that evidence of the Cortes kidnapping was not the crime with which defendant was charged "but would at most constitute evidence of similar overt acts as alleged in Count One of the indictment." The court then went on to carefully and correctly explain how the evidence of the Cortes kidnapping was to be treated.

In addition to the three overt acts focusing on the Cortes kidnapping, there were eleven other overt acts alleged. All of these were acts done by defendant and his accomplices in furtherance of the conspiracy to kidnap Mario Consuegra and hold him for ransom. Each of these overt acts was proven beyond a reasonable doubt. In proving that defendant participated in the Cortes kidnapping, the government may have proved more than it had to, but it proved conclusively that defendant was guilty as charged in the indictment. There was no constructive amendment of the indictment and no violation of the defendant's fifth and sixth amendment rights.

## II. THE ADMISSION OF HEARSAY EVIDENCE

Defendant claims that the district court "failed to determine [his] motion to acquit

---

3. The applicable standard of review is that the jury's finding must be upheld if there is substantial evidence, viewed in the light most favorable to the government, to uphold the conviction. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Davis*, 623 F.2d 188, 195 (1st Cir.1980).

4. The F.B.I. was called into the case early and made recordings of all telephone calls made by the kidnappers to the home of the victim's parents. Defendant's voice was identified by witnesses who knew him well.

on only admissible evidence." This, he asserts, was due to the indiscriminate admission of hearsay evidence. Defendant's argument in support of this claim is a broad-scale attack on Federal Rule of Evidence 801(d)(2)(E) and the procedure governing the admission of coconspirators' statements laid down by us in *United States v. Ciampaglia*, 628 F.2d 632 (1st Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 221 (1980), and *United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977).

If defendant is arguing, as it appears, that Federal Rule of Evidence 801(d)(2)(E) should be limited and restricted and that we should rethink our holdings in *Ciampaglia* and *Petrozziello* that argument is rejected. The Rule is clear, "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. Fed.R.Evid. 801(d)(2)(E). In *United States v. Petrozziello*, we held: "if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible." 548 F.2d at 23. Under Federal Rule of Evidence 104(a), this determination is made by the trial judge. *Id.* *Petrozziello* was fleshed out in *United States v. Ciampaglia* which held:

> If the prosecution attempts to introduce into evidence an out-of-court declaration under Fed.R.Evid. 801(d)(2)(E), the trial court, upon proper objection, may conditionally admit the declaration. If the declaration is conditionally admitted, the court should inform the parties on the record out of the hearing of the jury that (a) the prosecution will be required to prove by a preponderance of the evidence that a conspiracy existed, that the declarant and defendant were members

of it at the time that the declaration was made, and that the declaration was in furtherance of the conspiracy, (b) that at the close of all the evidence the court will make a final *Petrozziello* determination for the record, out of the hearing of the jury; and, (c) that if the determination is against admitting the declaration, the court will give a cautionary instruction to the jury, or, upon an appropriate motion, declare a mistrial if the instruction will not suffice to cure any prejudice.

628 F.2d at 638 (footnote omitted).

Our review of the record shows that the district court followed *Petrozziello* and *Ciampaglia* in ruling on the admissibility of statements made by the two coconspirators, Fuentes [5] and Stevenson. Defendant does not point to any specific errors of the district court in admitting the coconspirators' statements, but argues that the district court should have held a pretrial hearing to determine the admissibility of the statements under Rule 801(d)(2)(E). Although there might conceivably be instances where such a hearing would be helpful, we think that as a general rule such a hearing, unlike a pretrial suppression hearing, would unnecessarily lengthen the proceedings. Evidentiary questions are grist for the mill of district judges and, except in rare instances, can be handled competently in the trial context. In any event, this is a matter solely within the discretion of the district court. The district court did not abuse its discretion in refusing to hold a pretrial hearing on the admissibility of coconspirators' statements under Federal Rule of Evidence 801(d)(2)(E). Indeed, the record shows that such a hearing would have been a total waste of time and effort.

Defendant also argues that certain statements of the coconspirators should have been excluded because they were made after the conspiracy had been completed. His failure to specify by record

---

5. Juan Fuentes was an unindicted coconspirator who was given immunity from this and forty-

two other crimes in return for his testimony.

reference or otherwise what these statements were is sufficient grounds for rejecting this contention. If he is referring to statements made about burning the ransom pickup car, the Chevy Malibu, then he is simply mistaken. Those statements were admissible because the conspiracy continued so long as the conspirators were acting together to destroy incriminating evidence.

We conclude our discussion of this issue by pointing out that, contrary to defendant's assertion, there was a plethora of evidence, totally independent of the coconspirators' statements, proving that defendant was a member of the conspiracy to kidnap Mario Consuegra. As already noted, defendant was identified by three F.B.I. agents as the driver of the ransom pickup car [6] and most damning of all, his voice was positively identified by several witnesses as the one who spoke on the telephone to the victim's parents demanding the ransom and giving instructions for its payments. This was a classic open and shut case for the government. The testimony of the coconspirators only added frosting to a well-baked cake.

The defendant's motion for acquittal was properly denied.

## III. PRETRIAL PUBLICITY—FAIR TRIAL

Defendant contends that because of the pretrial publicity surrounding the case and the district court's failure in three specific respects to combat it, he was deprived of a fair trial. The three errors allegedly committed by the district court were: (1) the refusal to grant an evidentiary hearing and/or issue subpoenas to determine the scope and effect of pretrial publicity; (2) the denial of defendant's motion for continuance; and (3) the failure to conduct an adequate *voir dire* examination of the jury venire.

It is important to point out at the outset of our discussion that we are concerned only with pretrial publicity; the jury was sequestered during the trial. There was a great deal of pretrial publicity. Kidnapping is the type of crime that arouses public interest and the fact that defendant was a member of the Puerto Rico Police Department was bound to result in widespread media coverage. There were a total of 212 newspaper articles about the kidnapping, 158 of which mentioned defendant by name.

■ The general principles are well known. "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The realities of life must, however, be taken into consideration.

It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. *Spies v. Illinois,* 123 U.S. 131 [8 S.Ct. 21, 31 L.Ed. 80]; *Holt v. United States,* 218 U.S. 245 [31 S.Ct. 2, 54 L.Ed. 1021]; *Reynolds v. United States, supra.*

---

**6.** The F.B.I. conducted both an automobile and aerial surveillance of the site where the ransom was left. The car driven by defendant, and one of whose occupants picked up the ransom, was under constant surveillance both before and after the ransom was picked up.

*Id.* at 722–23, 81 S.Ct. at 1642–43. Mere juror exposure to news accounts of the crime with which defendant is charged does not presumptively deprive him of due process. *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975). Defendant must show that "the setting of the trial was inherently prejudicial or the jury-selection process of which he complains permits an inference of actual prejudice." *Id.* at 803, 95 S.Ct. at 2037. The principles enunciated in *Murphy* were reaffirmed in *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977):

> Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received.... But under *Murphy,* extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a "trial atmosphere ... utterly corrupted by press coverage," *Murphy v. Florida, supra,* 421 U.S. at 798, 95 S.Ct. at 2035.

There is no basis for defendant's claim that the pretrial publicity was so pervasive, intense and inflammatory as to produce a "trial atmosphere utterly corrupted by press coverage." The cases on which he relies are inapposite on their facts. In *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1961), it was the carnival atmosphere of the trial that created a presumptively prejudicial environment. *Id.* at 355–58, 86 S.Ct. at 1518–20. The Court specifically stated, "we cannot say that Sheppard was denied due process by the judge's refusal to take precautions against the influence of pretrial publicity alone ...." *Id.* at 354, 86 S.Ct. at 1518. In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct.

1639, 6 L.Ed.2d 751, there were news accounts of the defendant's prior convictions, his confession to twenty-four burglaries and six murders including the one with which he was charged and his unaccepted offer to plead guilty to avoid the death sentence. Justice Frankfurter, in his concurrence, characterized the pretrial publicity as an "anticipatory trial by newspapers." *Id.* at 729, 81 S.Ct. at 1646. In *Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), the Court held that it was a denial of due process to refuse a request for a change of venue because the people in the community from which the jury was drawn "had been exposed repeatedly and in depth [by television] to the spectacle of Rideau personally confessing in detail to the crimes with which he was later to be charged." *Id.* at 726, 83 S.Ct. at 1419.

■ . The pretrial publicity here was of an entirely different nature. The district court found that the news accounts were: "straightforward, unemotional, factual accounts of events and of the progress of official and unofficial investigation." Such news accounts furnish no basis for a court to presume that an unbiased jury could not be selected at the time and place of trial. *United States v. McNeill,* 728 F.2d 5, 9 (1st Cir.1984). Because there was no presumption of prejudice, the district court was not obliged to hold an evidentiary hearing on pretrial publicity prior to *voir dire. United States v. Gullion,* 575 F.2d 26, 28 (1st Cir.1978). The question of a continuance is left to the discretion of the district court, *id.,* and we have found nothing in the record suggesting that the court abused its discretion in refusing to grant a continuance because of pretrial publicity.

We now turn to the third alleged error of the district court, its *voir dire* examination of the jury venire. As defendant points out, this was conducted by the district judge. We are aware of an attempt by some segments of the trial bar to place *voir dire* exclusively in the hands of the lawyers. Under Federal Rule of Criminal

Procedure 24(a), the court "may permit" the attorneys for the parties to conduct the *voir dire* or "may itself conduct the examination." We see no basis for reviewing at all the district court's decision as to who conducts the examination of prospective jurors. Our review is limited to how the *voir dire* was conducted.

■ The trial court has broad discretion in its conduct of the *voir dire* because "the determination of impartiality, in which demeanor plays such an important part, is particularly within the province of the trial judge." *Ristaino v. Ross*, 424 U.S. 589, 594–95, 96 S.Ct. 1017, 1020–21, 47 L.Ed.2d 258 (1976) quoting *Rideau v. Louisiana*, 373 U.S. 723, 733, 83 S.Ct. 1417, 1422, 10 L.Ed.2d 663 (1963) (Clark, J., dissenting).

> If the trial judge, who conducted the voir dire and who could develop a contemporaneous impression of the extent and intensity of community sentiment regarding the defendant, believed that he had impanelled a jury of twelve open-minded, impartial persons, then we will set aside his action only where juror prejudice is manifest. *See Irvin v. Dowd*, 366 U.S. at 723–24, 81 S.Ct. at 1642–43; *United States v. Blanton*, 719 F.2d at 829–30.

*United States v. McNeill*, 728 F.2d at 9 (footnote omitted).

■ The sixth amendment does not require that each juror's mind be *tabula rasa*. The basic *voir dire* question is whether any prospective juror had such a fixed opinion that she or he could not impartially judge the guilt of the defendant. *Patton v. Yount*, —— U.S. ——, ——, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984); *United States v. Drougas*, 748 F.2d 8, 31 (1984); *United States v. Kelly*, 722 F.2d at 880.

■ The district court conducted an intensive and extensive four-day *voir dire*. It first posed a series of questions to the entire venire of 104 potential jurors. The venire was then divided into groups of twenty and each person was questioned individually and separately from the other prospective jurors. Each was asked whether she or he had read or heard anything about the case in the newspapers, on television or radio, or in conversations with others. If a person indicated an awareness of publicity concerning the case, the court probed further as to the extent of such knowledge and whether the person had formed an opinion of the guilt or innocence of the defendant. Every person who indicated some knowledge of the case was asked whether she or he could put aside what they had read or heard and render an impartial verdict based solely on the evidence adduced at trial and the court's instructions. Each time the court found ten jurors qualified, it considered requests for further *voir dire* and challenges to the cause. Two persons who expressed doubts about their ability to render an impartial verdict were excused by the court.

"Although a court need not defer to a juror's assurance of impartiality, *see Murphy v. Florida*, 421 U.S. at 800, 95 S.Ct. at 2036, to reach a contrary conclusion a court must rely on some evidence of pervasive, overpowering animus against defendant." *United States v. McNeill*, 728 F.2d at 10. We have found nothing in the record here, and defendant has not pointed to anything, indicating such animus by any of the potential jurors. The district court's *voir dire* examination fully complied with the standards of this circuit. It examined

> each prospective juror apart from other jurors and prospective jurors, with a view to eliciting the kind and degree of his exposure to the case or the parties, the effect of such exposure on his present state of mind, and the extent to which such state of mind is immutable or subject to change from evidence.

*Patriarca v. United States*, 402 F.2d 314, 318 (1st Cir.1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). There was no error in the conduct of the *voir dire*.

## IV. GIVING THE JURY THE INDICTMENT

During its charge, the district court read the indictment to the jury. The reading was interspersed with instructions on the law applicable to different parts of the indictment. At the beginning of the charge the court had instructed the jury that "[a]n indictment or formal charge against defendants is not evidence of guilt. Indeed, the defendants are presumed by law to be innocent." The indictment was not given to the jury when it started its deliberations. After about three hours of deliberations the jury requested that it be given the indictment because there was a difference of opinion as to what Counts One and Two charged. The court acceded to the request and instructed the jury:

Of course together with this indictment I will repeat my previous instructions to the effect that the indictment is not evidence of any nature in this case; that it raises no presumption against the defendant of any nature whatsoever. I also explain to you that as a matter of law the presumption is otherwise. The defendants are presumed innocent until such time if ever as the prosecution can prove by competent evidence and beyond reasonable doubt each and every element of the charges that are made against them.

I also mentioned this afternoon and in the preliminary instructions and I repeat that the only purpose of this document referred to as the indictment is to inform the defendants of the charges against them because in our form of government, in our system of justice defendants in a criminal case have a right to be informed beforehand of the charges that are made against them so that they will be able to present a defense and answer to those charges, therefore, do not assume anything, certainly do not assume anything against the defendant by the mere fact that they have been charged in this indictment.

Although this circuit has not ruled explicitly that an indictment may be sent to the jury for its use during deliberations we have indicated inferentially our acceptance of such a practice. In *United States v. Forzese*, 756 F.2d 217 (1st Cir.1985), we considered the question of whether it was error to submit overt acts to the jury as to which there was no evidence or which were not committed in furtherance of the conspiracy. *Id.*, at 221. It can be fairly assumed that the overt acts were in the indictment and it had been given to the jury. In *United States v. Hershenow*, 680 F.2d 847, 860 (1st Cir.1982), we noted without comment that the district court sent a reduced version of the indictment into the jury room. So also in *United States v. Cerrito*, 612 F.2d 588, 592 (1st Cir.1979), we accepted as a matter of course that the jurors had the indictment in their possession. In *United States v. Coast of Maine Lobster Co., Inc.*, 557 F.2d 905, 909 (1st Cir.), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977), a photocopy of an indictment, some counts of which had been covered with masking tape, was sent to the jury. The alleged error was not giving the indictment to the jury, but giving it to it in such a form. Finally, in *Yoffe v. United States*, 153 F.2d 570, 576 (1st Cir.1946), the alleged error was that the bills of particulars were not submitted to the jury along with the indictments.

■ The well nigh universal rule is that, subject to a proper covering instruction, whether the indictment should be given to the jury for use during its deliberations is within the discretion of the trial court. *See, e.g., United States v. Coward*, 669 F.d 180, 184 (4th Cir.), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 470, *reh'g denied*, 458 U.S. 1116, 102 S.Ct. 3499, 73 L.Ed.2d 1378 (1982); *United States v. Crossland*, 642 F.2d 1113, 1115 (10th Cir. 1981); *United States v. Scales*, 594 F.2d 558, 561–62 (6th Cir.), *cert. denied*, 441 U.S. 946, 99 S.Ct. 2168, 60 L.Ed.2d 1049 (1979); *United States v. Wedelstedt*, 589

F.2d 339, 350 (8th Cir.1978), *cert. denied,* 442 U.S. 916, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979); *United States v. Haynes,* 573 F.2d 236, 241–42 (5th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978).

 We now formally adopt this rule. It is clear that the district court's instructions were more than adequate to offset any prejudice that might inhere from the jury's possession of the indictment. There was no error or abuse of discretion in sending the indictment to the jury.

## V. THE SENTENCING

It is unclear to us just what issue defendant is raising as to his sentencing. His brief suggests that he is claiming that the district court did not disclose the complete presentence report to him and he was thereby prevented from fully rebutting the information contained therein. The government does not reply to this, but says that because he failed to order the transcript of his sentencing hearing, he has waived any claim to errors that might have occurred at the sentencing.

The record before us does contain a complete transcript of the sentencing hearing. We decline to settle the dispute between defendant's attorney and the prosecutor as to which one ordered it. We have read the sentencing transcript carefully and it is clear that defendant and his attorney were furnished a copy of it pursuant to Federal Rule of Criminal Procedure 32(a)(1)(A). It is also clear that defendant and his attorney were given an opportunity to rebut the information contained in it and did so at great length. There were no sentencing errors of any kind by the district court.

*Affirmed.*