**UNITED STATES of America**

v.

**Ahmad MODARRESSI, and Majid Modarressi.**

**Crim. No. 88–14–WF.**

United States District Court, D. Massachusetts.

Feb. 12, 1988.

See also 690 F.Supp. 87.

Amos Hugh Scott, Choate, Hall & Stewart, Boston, Mass., for Ahmad Modarressi and Majid Modarressi.

Gary C. Crossen and Richard G. Stearns, U.S. Attys., for U.S.

## MEMORANDUM AND ORDER

WOLF, District Judge.

Defendant Majid Modarressi has moved for reconsideration of the Magistrate's Order dated January 27, 1988 (the "Magistrates's Order") authorizing the media to copy a ten-minute segment of a videotape of an undercover operation which was played at defendant's detention hearing. For the reasons explained below, this motion is denied.[1]

The relevant facts are thoroughly described in the Magistrate's Order and are hereby adopted for the purposes of this opinion. They present the issue of whether the common law presumption of public access to court records which would ordinarily allow the media to obtain the videotape is overcome by the threat which the broadcast of the videotape would pose to defendant's paramount constitutional right to a fair trial.

▮ There is a split among several Circuits concerning the standard to be applied in deciding defendant's motion. Some circuits have held that there is a strong presumption in favor of granting public access to videotapes played in court. Other Circuits have found that the common law right of public access is just one of many factors which ought to be considered, but not given special weight, by trial courts. *Compare e.g. United States v. Criden,* 648 F.2d 814, 823 (3rd Cir.1981) ("there is a strong presumption that material introduced into evidence ... should be made reasonably accessible in a manner suitable for copying and broader dissemination") *and In re Application of National Broadcasting Co.,* 635 F.2d 945, 952 (2d Cir.1980) ("it would take the most extraordinary circumstances to justify restrictions on the opportunity of those not physically in the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction") *with Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 434 (5th Cir.1981) ("we read the [Supreme] Court's pronouncements as recognizing that a number of factors may militate against public access. In erecting such stout barriers against those opposing access and in limiting the exercise of the trial court's discretion, our fellow circuits have created standards more appropriate for protection of constitutional than common law rights") *and United States v. Webbe,* 791 F.2d 103, 106 (8th Cir.1986) ("We favor the approach of the Fifth Circuit in *Belo.*"). The First Circuit has not decided the weight to be given to the common law right of access to records of public court proceedings when, as here, videotapes played in court are at issue.

The conflict in the standards which might be applied is not, however, material to the disposition of defendant's motion for reconsideration. Defendant urges the court to adopt the view of the Fifth Circuit in *Belo,* to find there is no strong presumption in favor of public access, and to "err, if err we must, on the side of generosity in the protection of a defendant's right to a fair trial before an impartial jury." *Belo,* 654 F.2d at 431. However, even assuming, without deciding, that the *Belo* standard is applicable, the court does not find defendant's motion to be meritorious. Rather, the court finds that the public broadcast of the videotape will neither materially affect the degree or nature of likely pretrial pub-

---

1. Defendant has not shown that the Magistrate's Order is clearly erroneous or contrary to law. Ordinarily, this would end the court's inquiry in reviewing a decision of a pretrial matter by the Magistrate. *See* 28 U.S.C. § 636(b)(1)(A). However, the Supreme Court has said that the question whether the media should be allowed to copy and utilize court records, including tapes, is "one best left to the sound discretion of the

*trial court,* a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1984) (emphasis added). Thus, the court has also considered *de novo* the issue presented by this appeal and has determined independently that release of the videotape is appropriate.

licity nor impair defendant's right to an impartial jury.

The court has viewed the videotape. It is of poor video quality. The audio is, in part, hard to follow. The substance of what is said on the videotape has already been published and broadcast. Regardless of whether the videotape is released, it is foreseeable that this information will be republished and rebroadcast. The broadcast of the actual videotape would, at most, only marginally add to the pretrial publicity in this case. It would not materially alter the nature of that publicity, except perhaps to make it more accurate.[2]

Moreover, based on personal experience with highly publicized cases in this District, the court concurs—with some regret—with the observation of the Court of Appeals for the District of Columbia, in connection with the Abscam cases, that "[d]efendants, as well as the news media, frequently overestimate the extent of the public's awareness of news." *Application of National Broadcasting Co., Inc.*, 635 F.2d 945, 953 (2nd Cir.1980).

■ In any event, while the defendant has a vital right to be tried by an impartial jury, this does not mean that all potential jurors exposed to pretrial publicity must be disqualified. It is not essential that "each juror's mind be a *tabula rasa*." *United States v. Medina*, 761 F.2d 12, 20 (1st Cir.1985). Rather, jury empanelment in this case, like every other, will be carefully conducted with a view to assuring that the jurors do not have "such fixed opinions that they could not judge impartially the guilt of defendant." *Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984); *U.S. v. Stackpole*, 811 F.2d 689, 697 (1st Cir.1987).

The court expects that even if the process of jury selection is marginally more challenging because of the broadcast of the videotape—in addition to other past and foreseeable future pretrial publicity—it will be possible to empanel an impartial jury. As the Court of Appeals for the First Circuit has said, " 'impartial jurors have been selected in many highly publicized criminal cases by the use of a rigorous and searching *voir dire* of the jury venire' and jurors chosen could be 'emphatically and clearly instructed to decide the case only on the evidence presented in court.' " *In re Globe*, 729 F.2d 47, 53 (1st Cir.1984) *quoting Colon Berrios v. Hernandez Agosto*, 716 F.2d 85, 92 (1st Cir.1983).

The experience of other courts in prosecutions which received widespread pretrial publicity across the country reinforces the conclusion that an impartial jury will be attainable in this case. *See National Broadcasting*, 635 F.2d at 953 ("despite the extensive publicity about Abscam ..., about half of those summoned for jury selection had no knowledge of Abscam, and only a handful had more than cursory knowledge"); *United States v. Haldeman*, 559 F.2d 31, 62 n. 37 (D.C.Cir.1976), *cert. denied sub nom. Ehrlichman v. United States*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) ("[m]ost of the venire simply did not pay an inordinate amount of attention to Watergate"); *Associated Press v. United States District Court for the Central District of California*, 705 F.2d 1143, 1146 (9th Cir.1983) (pretrial documents in widely publicized prosecution of John DeLorean could be made available to public without irreparably injuring fair trial rights); *Applications of National Broadcasting Co.*, 828 F.2d 340 (6th Cir. 1987) (order requiring public access to motion to disqualify judge for bias, and to judicial inquiry into conflict of interest of counsel, in highly publicized criminal trial involving Jackie Presser, President of the Teamsters Union).

In addition, if the *voir dire* in this case raises a serious question concerning the ability to select an impartial jury, the court

---

**2.** No motion to suppress the videotape has been filed. In response to the court's inquiry, defendant's counsel explained that he is exploring whether a certain, novel theory suggested by the facts of this case would justify a motion to suppress. Although it would be premature for the court to develop now a definitive view concerning the admissibility of the videotape, there does not appear to be a significant risk that its broadcast will expose potential jurors to inadmissible evidence.

may continue the trial or hold it in another part of the state. Thus, the court does not believe that broadcast of the videotape will impair the defendant's right to a fair trial.

For the foregoing reasons, defendant's motion to reconsider and reverse the Magistrate's Order is hereby DENIED. Accordingly, it is hereby ORDERED that:

1. The public, including the media, shall be allowed to obtain from the Clerk of this Court the ten-minute videotape segment played at the defendant's detention hearing; and

2. This order is STAYED until Wednesday, February 17, 1988 at 12:00 noon to permit defendant to consider whether to appeal and, if he wishes, to seek a further stay of this Order from the Court of Appeals.