UNITED STATES of America,

v.

**Alfredo GALLEGO, George Gallego, and Steven Martinez, Defendants.**

No. S1 95 Cr. 284 (LAK).

United States District Court,
S.D. New York.

Dec. 11, 1995.

Peter K. Vigeland, Robin E. Abrams, Assistant United States Attorneys, Mary Jo White, United States Attorney, for U.S.

Phillip R. Edelbaum, for Defendant Alfredo Gallego.

KAPLAN, District Judge.

On January 21, 1993, a United States Postal Service truck driven by Guillermo Gonzalez was robbed and Gonzalez killed. Alfredo Gallego pleaded guilty later that year to a four count indictment charging him with various offenses connected to the incident, although not to murder. Earlier this year, the grand jury charged Gallego with, among other things, murdering and conspiring to murder Gonzalez. Gallego now moves to moves to dismiss the murder and conspiracy to murder counts on the ground that they violate his rights under the Double Jeopardy Clause of the Fifth Amendment.

*Facts*

*The 1993 Prosecutions*

Alfredo Gallego was arrested by New Jersey authorities, allegedly after fleeing from the postal truck containing Gonzalez's dead body. On February 16, 1993, a grand jury in this district returned an indictment (93 Cr. 103) charging Gallego with conspiracy to rob and assault, robbery of a postal service employee, assault with a dangerous weapon, and carrying a firearm to commit a crime. (Vigeland Aff.Ex. A) The government did not charge murder or conspiracy to murder in 1993 because it believed it could not prove those charges beyond a reasonable doubt given the evidence available and the law as the government understood it.

· In the spring of 1993, Gallego's counsel opened plea discussions with the government, which advised Gallego in writing that the government, regardless of any plea, would charge Gallego with more serious crimes, such as conspiracy to murder, in the event the investigation yielded additional evidence. (Vigeland Aff. ¶ 8 & Ex. B) Nevertheless, Gallego pleaded guilty to all four counts of the indictment on May 7, 1993. During the allocution, he acknowledged that the government had no plea agreement with him and had made no promises. (*Id.* ¶ 9 & Ex. C)

On September 21, 1993, while Gallego was awaiting sentencing, the grand jury returned an indictment charging Giovanni Rosado with conspiracy to rob, robbery, and related charges arising out of the same events. (*Id.* ¶ 13 & Ex. E) Again, these were the most serious charges the government thought it could bring. (*Id.* ¶ 17)

Gallego was sentenced by Judge Sand on June 8, 1994. The government obtained an upward departure from the robbery guideline range based on Gonzalez's death. (*Id.* ¶¶ 10, 16 & Ex. H) Gallego was sentenced to 17½ years of incarceration.

Rosado then went to trial in September 1994, a trial that resulted in a hung jury. (*Id.* ¶ 17) Subsequently, however, Rosado entered into a cooperation agreement and provided information that led to significant incriminating evidence against Gallego and others allegedly involved. (*Id.*)

*The 1995 Indictments*

Rosado's cooperation led the government to begin presenting evidence to a new grand jury in the spring of 1995. At that point, however, Gallego could not have been prosecuted, consistent with the Double Jeopardy Clause, because the Second Circuit's decision in *United States v. McCormick,* 992 F.2d 437 (2d Cir.1992), would have precluded prosecution on the basis of the enhancement of Gallego's sentence in consequence of Gonzalez's death. The grand jury, however, on April 10, 1995 indicted Gallego's brother, George Gallego, and Steven Martinez for murder, conspiracy to murder, robbery, and conspiracy to rob. (95 Cr. 284)

On June 14, 1995, the Supreme Court held in *Witte v. United States,* — U.S. —, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995), that con-

sideration of relevant conduct in determining a defendant's sentence does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause. *Id.* at ——––——, 115 S.Ct. at 2204–09. In the government's view, *Witte* overruled *McCormick* and effectively removed any double jeopardy bar created by the enhancement of Gallego's sentence. On June 27, 1995, the grand jury returned a superseding indictment (S1 95 Cr. 284), which charged Gallego with murder and conspiracy to murder. It is this indictment that is the subject of the current motion.

*Discussion*

Defendant's double jeopardy challenge to the murder and conspiracy to murder charges touches several strands of double jeopardy jurisprudence. These questions are raised in the context of often shifting guidelines from the Supreme Court.

Since the 1930s, the starting point for analysis under the Double Jeopardy Clause has been *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which held that the test for surviving double jeopardy challenge where the same act or transaction constitutes a violation of two statutory provisions is whether each provision "requires proof of a different element." *Id.* at 304, 52 S.Ct. at 182. In *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), the Court expanded double jeopardy protection, holding that a second prosecution is barred if, to establish an essential element of the offense charged, the government would have to prove conduct that constituted an offense for which the defendant had already been prosecuted. This "same conduct" test in *Grady,* however, was overruled by a majority of Justices in one of several voting alignments in *United States v. Dixon,* —— U.S. ——, ——, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993). Hence *Blockburger* remains the foundation of analysis.

*Conspiracy to Murder*

■ Count One of the indictment at issue charges that from approximately September

1992 to January 21, 1993, Gallego, his brother, Martinez, and Rosado conspired to murder a postal service employee in the performance of his duties. The indictment alleges, among other overt acts, that Gallego shot and killed Gonzalez.

In evaluating double jeopardy challenges to conspiracy charges, the application of the *Blockburger* test requires that the Court weigh the so-called *Korfant* factors to ascertain whether the same conspiracy has been charged twice:

"(1) the criminal offense charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of the operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where the overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies." *United States v. Macchia,* 35 F.3d 662 (2d Cir.1994) (citing *United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985)).[1]

■ The 1993 indictment charged a conspiracy with others known and unknown. The alleged duration was the single day, January 21, 1993. The alleged objects were assault and robbery and, in the course thereof, to endanger the life of a postal employee. The only overt act alleged was Gallego's driving of the postal truck containing Gonzalez's dead body. The present indictment, on the other hand, involves a substantially longer time period, alleges that the conspiracy embraced extensive planning and reconnaissance operations (and the building of a silencer), asserts that the killing of Gonzalez was an object of the conspiracy, and implicates additional alleged co-conspirators. While there are, to be sure, elements common to both the alleged conspiracies—including some overlap of participants, some overlap of geographic areas relevant to the conspiracies alleged, and some interdependence of the success of the alleged conspiracies— the Court concludes that the differences out-

---

1. The vitality of *Korfant* was cast into doubt briefly by *Grady,* but remains solidly in effect now that *Dixon* has overruled *Grady. See Macc-* *hia,* 35 F.3d at 667–68 (discussing the history of *Korfant* analysis).

weigh the common elements. *Cf. Macchia,* 35 F.3d at 669–72.

■ The enhancement of Gallego's prior sentence in consideration of the victim's death in 1993 adds no additional force to the double jeopardy claim in light of *Witte.* In *Witte,* after the defendant pleaded guilty to a federal marijuana charge, the sentencing judge considered the defendant's involvement with a cocaine conspiracy, resulting in a higher sentence than would have been imposed if only the marijuana had been considered. The defendant later was prosecuted on cocaine charges. As noted above, the Court rejected a double jeopardy challenge, holding in essence that a prosecution for previously uncharged crimes is not barred because that conduct was considered in a prior sentencing for another offense.

Defendant argues that *Witte* is distinguishable because that case involved successive indictments for two distinct conspiracies, whereas this case involves successive indictments based on a single incident. The flaw in this argument is its assumption that successive indictments based on the same conduct are barred for that reason alone, as *Grady* indicated. *Dixon,* however, definitively rejected that view. Hence, *Witte* forecloses Gallego's argument here that Judge Sand's consideration of the uncharged crimes of conspiracy to murder and murder of the victim bars the current prosecution for those crimes.

### The Murder Charges

The 1995 indictment charges Gallego with Gonzalez's murder on two distinct theories. Count Two alleges that the defendants killed Gonzalez with malice aforethought (1) "by lying in wait to shoot and kill [him] ... and [2] by killing [him] in the perpetration of, and the attempt to perpetrate, the robbery of money and property in the Postal Service truck."

### Lying in Wait Theory

■ The 1993 indictment charged Gallego with robbery of the postal service truck and assault with a dangerous weapon. Count Two of the 1995 indictment patently requires proof of at least two elements not essential to conviction under any charges in the 1993 indictment—the killing of Gonzalez and lying in wait. Similarly, each of the charges to which Gallego pleaded guilty in 1993 required proof of at least one element not essential to conviction on the pending indictment.[2] Hence, the *Blockburger* test is satisfied. Moreover, in view of *Dixon's* holding that a prosecution for assault does not bar, on double jeopardy grounds, a subsequent prosecution for assault with intent to kill, *see* ‑‑‑‑ U.S. at ‑‑‑‑, 113 S.Ct. at 2858 (Scalia and Kennedy, JJ.); *id.* at ‑‑‑‑, 113 S.Ct. at 2868 (Rehnquist, C.J., O'Connor and Thomas, JJ.) (concurring on this point), the 1993 robbery and assault prosecutions do not bar the 1995 prosecution for premeditated murder, even if that murder was committed in the course of the robbery and assault.

### Felony Murder Theory

■ The felony murder theory in the 1995 indictment presents a different question. In order to convict for felony murder, the government need prove, in addition to any of the crimes to which Gallego pleaded guilty in 1993, only the killing of Gonzalez. Thus, the *Blockburger* test is not satisfied. Moreover, the Supreme Court has held that felony murder is not a separate and distinct offense from the various elements of the underlying felony or felonies and, in consequence, that a

---

2. The conspiracy charge required proof of an agreement to rob, the robbery charge of intent to rob, the assault charge of intent to assault, and the firearms charge of use of a firearm in a crime of violence. *See* 18 U.S.C. §§ 111, 371, 924(c), 2114, 2. This conclusion is not affected by the fact that the conspiracy count in the present indictment alleges, as one of a number of overt acts, that Gallego *shot* and killed Gonzalez (Indictment ¶ 3(h)) (emphasis added) and thus that he used a firearm in a crime of violence. In order to convict on the conspiracy count, the government must prove only the agreement and that any of the conspirators committed an overt act in furtherance thereof. It need not prove this specific overt act. *See United States v. Medina,* 761 F.2d 12, 15 (1st Cir.1985) ("It has long been established beyond challenge the overt act need not be substantive crime that is the object of the conspiracy."). Hence, *Blockburger* does not warrant the conclusion that this charge is barred. *See also Dixon,* ‑‑‑‑ U.S. at ‑‑‑‑, 113 S.Ct. at 2867 (Rehnquist, C.J., O'Connor, and Thomas, JJ.) (concurring opinion) (focus is on the statutory elements of crimes charged, not on proof relied upon to secure conviction).

felony murder conviction bars later prosecution for the underlying felony. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam). In *Dixon*, a majority of Justices left this rule intact. ——— U.S. at ———, 113 S.Ct. at 2857 (Scalia and Kennedy, JJ.) (citing with approval *Illinois v. Vitale*, 447 U.S. 410–420, 100 S.Ct. 2260–2267, 65 L.Ed.2d 228 (1980) and *Harris* ); *id.* at ——–———, 113 S.Ct. at 2868–69 (White and Souter, JJ.). *See United States v. Henderson*, 535 F.Supp. 677 (N.D.N.Y.1982), *rev'd on other grounds*, 698 F.2d 589 (2d Cir.), *cert. denied*, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 118 (1983) (Double Jeopardy Clause barred subsequent prosecution for felony murder after the defendant's conviction of attempted robbery).[3]

In an effort to avoid this conclusion, the government advances a novel theory. It points out that there was authority when it refrained from prosecuting Gallego for felony murder in 1993 that the applicable statute, 18 U.S.C. § 1111, required proof of malice aforethought, not merely intent to commit the underlying felony.[4] The government had no evidence of intent to kill and therefore thought it inappropriate to charge Gallego with felony murder. (Vigeland Aff. ¶ 15, ex. G at 11–16) The Second Circuit, subsequent to Gallego's plea, in *United States v. Thomas*, 34 F.3d 44 (2d Cir.), *cert. denied*, ——— U.S. ———, 115 S.Ct. 527, 130 L.Ed.2d 431 (1994), held that the intent required to convict for felony murder is only the intent to commit the underlying felony, not intent to kill. In consequence, the government argues that the Double Jeopardy Clause should not bar the felony murder charge because its decision not to charge that crime in 1993 was reasonable, given the law at the time. The government attempts to support this argument by analogizing from *Brown v. Ohio*, 432 U.S. 161, 170 n. 7, 97 S.Ct. 2221, 2227–28 n. 7, 53 L.Ed.2d 187 (1977), which held that there is no double jeopardy bar to a subsequent prosecution based on the discovery by the government, following the initial prosecution, of evidence necessary to sustain the charge which could not have been discovered earlier by due diligence.

The government's argument is unpersuasive. In *Brown*, the evidence necessary to the charge ultimately leveled simply was not available to the government, through not fault of its own, at the time of the first prosecution. Here, on the other hand, the strictly legal question of the intent required to convict for felony murder was open, at least in this circuit, at the time of the first indictment. While the government's restraint in declining to allege felony murder based on its good faith belief that the law should not support such a charge is the sort of admirable decision one hopes to see from those possessed of the enormous power of the prosecutorial office, the fact remains that a good faith basis existed in 1993 for a felony murder indictment. In view of the government's control over the decision whether to prosecute, it is sensible that the government should bear the risk of finality of a legal determination it makes. Consequently, the Court sees no reason to carve a new exception to the Double Jeopardy Clause.

*Conclusion*

For the foregoing reasons, the Court grants the defendant's motion to dismiss the felony murder theory in Count 2. The motion is denied in all other respects.

SO ORDERED.

---

3. The Second Circuit reversed this holding on two theories, neither of which applies to this case. First, it held that the defendant had waived his right to assert the Double Jeopardy Clause because it was asserted after the second prosecution, rather than before the second prosecution. Second, the Second Circuit held that the defendant was not actually punished twice because the conviction for the underlying felony had been vacated as a result of the defendant's successful challenge. In this case, defendant Gallego has raised the Double Jeopardy Clause in a timely manner and his previous punishment remains in effect.

4. The government cites to *United States v. Sides*, 944 F.2d 1554, 1558 (10th Cir.), *cert. denied*, 502 U.S. 989, 112 S.Ct. 604, 116 L.Ed.2d 627 (1991).